IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CLEAN AIR COUNCIL, INC. and PENNENVIRONMENT, INC., | : : : : |
| Plaintiffs, | : : |
| v. | : CIVIL ACTION : NO. 06–00741 : |
| KATHLEEN A. MCGINTY in her capacity as Secretary of the PENNSYLVANIA DEPARTMENT OF ENVIRONMENTAL PROTECTION, | : : : : : |
| Defendant, | : : |
| and | : : |
| ALLIANCE OF AUTOMOBILE MANUFACTURERS, | : : : |
| Defendant-Intervenor. | : : |

**MEMORANDUM**

**ROBERT F. KELLY, Sr. J.**                                            **SEPTEMBER  22, 2006**

The Clean Air Council, Inc. and PennEnvironment, Inc. (the "Plaintiffs") are bringing a citizen suit against Defendant Kathleen A. McGinty (the "Secretary"), in her official capacity as Secretary of the Pennsylvania Department of Environmental Protection ("PADEP"), for violations of the federal Clean Air Act ("CAA"). Presently before this Court is the Secretary's Motion to Dismiss Plaintiffs' Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(6), and the Alliance of Automobile Manufacturers's (the "Alliance") Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(6).  These Motions to Dismiss pursuant to Fed. R. Civ. P. 12(b)(6) will be granted.

I.  **STANDARD OF REVIEW**

A motion to dismiss, pursuant to Federal Rule of Civil Procedure 12(b)(6), tests the legal sufficiency of the complaint. Conley v. Gibson, 355 U.S. 41, 45-46 (1957). A court must determine whether the party making the claim would be entitled to relief under any set of facts that could be established in support of his or her claim. Hishon v. King & Spalding, 467 U.S. 69, 73 (1984) (citing Conley, 355 U.S. at 45-46); see also Wisniewski v. Johns-Manville Corp., 759 F.2d 271, 273 (3d Cir. 1985). In considering a Motion to Dismiss, all allegations in the complaint must be accepted as true and viewed in the light most favorable to the non-moving party. Rocks v. City of Phila., 868 F.2d 644, 645 (3d Cir. 1989) (citations omitted). Exhibits which are attached to the complaint and upon which one or more claims are based can be considered in deciding a motion to dismiss pursuant to Rule 12(b)(6). See Rossman v. Fleet Bank (R.I.) Nat'l Assoc., 280 F.3d 384, 388 n.4 (3d Cir. 2002). However, a court need not credit either "bald assertions" or "legal conclusions" in a complaint when deciding a motion to dismiss. Evancho v. Fisher, 423 F.3d 347, 351 (3d Cir. 2005) (citations omitted).

II.  **BACKGROUND**

This is a citizen suit brought under the CAA for alleged violations of an "emission standard or limitation" committed by the Secretary. 42 U.S.C. § 7604(a)(1) (2000). Plaintiffs seek a declaration that the PADEP is in ongoing violation of its State Implementation Plan ("SIP") and an injunction ordering the Secretary to fully implement the Pennsylvania Clean Vehicles Program. (Amend. Compl. pg. 15). Plaintiffs request that this Court compel the Secretary to bar the sale or delivery of new automobiles in the Commonwealth that do not meet the California Low Emissions Vehicle standards ("CA LEV II"). 25 Pa. Code § 126.411 (2006).

Plaintiffs' allege that the Secretary has violated the CAA and Pennsylvania's federally approved SIP by failing to implement certain provisions of the Pa. Clean Vehicles Program.  (Amend. Compl. ¶¶ 1, 7, 8, 40, 41 and Count 1).

The federal CAA was enacted to protect and enhance the quality of the Nation's air resources and promote the public health and welfare.  Under the CAA, 42 U.S.C. §§ 7401-7642 (2000), the United States Environmental Protection Agency ("EPA") is given the authority to promulgate maximum levels for air-borne pollutants.  The EPA accomplishes this by establishing National Ambient Air Quality Standards ("NAAQS") for certain air pollutants.  42 U.S.C. § 7409.  These air quality standards are designed to protect the public from the known or anticipated adverse effects of air pollution, and are set based on strict criteria and adequate margins of safety.  §7409(b).

Once the EPA establishes the NAAQS, the states are responsible for developing plans that provide for their implementation, maintenance, and enforcement.  42 U.S.C. § 7410.  Each state adopts a SIP that details the particular measures the state will take to ensure that the air within its borders does not contain more than federally determined acceptable levels of various pollutants.  See Am. Lung Ass'n of N.J. v. Kean, 871 F.2d 319, 322 (3d Cir. 1989) (describing scheme created by Clean Air Act).  Pennsylvania enacted the Clean Vehicles Program as one step towards its compliance with the NAAQS, and the EPA approved and included this program in the Commonwealth's SIP in 1998.  28 Pa. Bull. 5873 (Dec. 5, 1998).

Under the CAA, a distinction is made between stationary and movable pollution sources. Stationary sources include factories and power plants, and states are rather free in choosing the methods to attaining compliance with the NAAQS from these sources.  42 U.S.C. §§ 7401-7515.

States are more constrained in what they can regulate in regards to movable sources, which includes motor vehicles. 42 U.S.C. §§ 7521-7590. Congress recognized the potentially chaotic consequences of allowing each state to promulgate regulations for auto emissions, and therefore expressly preempted the states from adopting or enforcing emissions related requirements for new motor vehicles. Air Quality Act of 1967, Pub. L. No. 90-148, 81 Stat. 485, 501 (1967).

The CAA, as originally drafted, stated that no individual state could "adopt or attempt to enforce any standard relating to the control of emissions from new motor vehicles or new motor vehicle engines . . .." 42 U.S.C. § 7543(a). However, California is authorized to adopt new vehicle emissions control rules different from the national standards. This authorization comes from the EPA, which granted the state a preemption waiver from the national standards. 42 U.S.C. § 7543(b). California cannot enforce its standards if the EPA does not concur that the rules meet the criteria specified in the CAA. 42 U.S.C. § 7543(b).

Amendments to the CAA allowed other states to adopt California's standards. Section 177 of the CAA, adopted in 1977, gives other states the option of adopting California's emissions standards instead of the national standards. 42 U.S.C. § 7507. States must adopt standards identical to California though, and must give automobile manufacturers two years lead time before putting the standards into effect. Id. Many states in the 1990's began to borrow the California standards, especially the states in the Northeast. (Def. Inter. Br. 4).

Pennsylvania's Clean Vehicles Program was established under Section 177 of the CAA. This program is designed primarily to achieve emission reductions of the precursors of ozone and other pollutants from new motor vehicles. 25 Pa. Code § 126.401 (2006). The regulations incorporated by reference certain provisions of CA LEV II, thus the California standards became

part of the Commonwealth's regulations.  40 C.F.R. § 52.2020© (2006).

When the California regulations were adopted, the Commonwealth also adopted a temporary compliance alternative known as the National Low Emission Vehicle program ("NLEV").  25 Pa. Code § 126.401(b) (2006) ("This subchapter allows motor vehicle manufacturers to comply with the voluntary NLEV program as a . . . compliance alternative to the Pennsylvania Clean Vehicles Program requirements . . .").  The temporary compliance alternative extended until model year 2006, after which time the CA LEV II standards became operative in Pennsylvania.  25 Pa. Code § 126.402.  The Clean Vehicles Program is codified at 25 Pa. Code §§ 126.401–126.441.

The Pennsylvania Environmental Quality Board ("EQB") presented a proposed rulemaking that would amend the Clean Vehicles Program by postponing the compliance date until model year 2008 instead of model year 2006.  36 Pa. Bull. 715 (Feb. 11, 2006).  The EQB has not proposed adoption of the CA LEV II standards, because the Secretary finds that the CA LEV II standards were automatically adopted as the current regulations upon expiration of the NLEV alternative compliance provision.  See Proposed Rulemaking - Pa. Clean Vehicles Program Amend. available at http://www.dep.state.pa.us/dep/ subject/eqb/eqb2005.htm#101805.

A final rulemaking is scheduled to be presented to the EQB in September, 2006.  (Def. Br. 6).  The EQB has stated its intention to suspend enforcement of the Pennsylvania Clean Vehicles Program until the rulemaking process has commenced.  36 Pa. Bull. 715 (Feb. 11, 2006).  Plaintiffs bring this action to stop the Secretary from suspending enforcement of the Pennsylvania Clean Vehicles program during this rulemaking process.

### III.     DISCUSSION

The issue presented in Defendants' Motions to Dismiss is whether Plaintiffs have stated a claim upon which this Court may grant relief.  Plaintiffs claim that the Secretary has violated an "emission standard or limitation," but they fail to state what standard she has violated.  Plaintiffs do not state specific affirmative steps that the Secretary failed to implement, and for that reason the Motions to Dismiss must be granted.  Furthermore, the case law in this Circuit and others does not support Plaintiff's assertion that the PADEP's decision to suspend prosecution of violators, during the rulemaking process, is a violation of an emission standard or limitation under the CAA.

Plaintiffs filed this suit under the citizen suit provision of the CAA asserting that this court has jurisdiction under 42 U.S.C. § 7604(a)(1).  In the context of a citizen suit under the CAA, for violation of an "emission standard or limitation," the plaintiff must allege that the defendant has violated or is in violation of an "emission standard or limitation."  42 U.S.C. § 7604(a)(1). The definition of "emission standard or limitations" as found in section 7604(f) of the CAA reads as follows:

> (f) "Emission standard or limitation under this chapter" defined
>
> For purposes of this section, the term "emission standard or limitation under this chapter" means—
>
>     (1) a schedule or timetable of compliance, emission limitation, standard of performance or emission standard,
>         . . .
>     (4) any other standard, limitation, or schedule established under any permit issued pursuant to subchapter V of this chapter or under any applicable State implementation plan approved by the administrator, any permit term or condition, and any requirement to obtain a permit as a condition of operations.

>which is in effect under this chapter (including a requirement applicable by reason of section 7418 of this title) or under an applicable implementation plan.

42 U.S.C. § 7604(f)(1) and (4) (2006).

Section 7604 has been interpreted to allow a district court to consider citizen suits seeking to police plan violations when specific measures requiring state action included in a SIP are not undertaken by the state. Del. Valley Citizen Council v. Davis, 932 F.2d 256 (3d Cir. 1991). The Second Circuit has succinctly stated what the plaintiff needs to allege in citizen suits under the CAA. "To state a claim under the citizen suit provision a plaintiff must allege a violation of 'a specific strategy or commitment in the SIP and describe, with some particularity, the respects in which compliance with the provision is deficient.'" Coal. against Columbus Ctr. v. City of N.Y., 967 F.2d 764, 769 (2d Cir. 1992) (citing Council of Commuter Org. v. Metro. Transp., 683 F.2d 663, 670 (2d Cir. 1982)).

Specific affirmative violations must be stated in the claim. Case law indicates that this complaint's lack of specific affirmative violations of the SIP constitutes a failure to state a claim under Fed. R. Civ. P. 12(b)(6). In Am. Lung Ass'n of N.J. v. Kean, 871 F.2d 319, 323 (3d Cir. 1989), the state of New Jersey had obligated itself under its SIP to install devices to limit ozone escape during automobile refueling and gasoline barge loading. Injunctive relief was granted in that citizen suit because the state had failed to install the specified devices in a timely manner. Concerned Citizens of Bridesburg v. EPA, 836 F.2d 777 (3d Cir. 1987), presents a factual scenario where the EPA rescinded fourteen state and local regulations contained in Pennsylvania's SIP. Id. at 779. The court held that the EPA had a statutory obligation under 42 U.S.C. § 7410 to propose its revisions to the Commonwealth for a hearing before deleting regulations. Id. at 780. By bypassing the Commonwealth, the EPA had violated the terms of the

7

statute. Relief was granted in these cases because the defendant EPA bypassed the specific requirements for amendment of the state's SIP and the citizen suit was proper.

Following these precedents, this District has required that plaintiffs allege violations of specific strategies or commitments in the applicable SIP. In Clean Air Council v. Mallory, 226 F.Supp.2d 705, 709 (E.D. Pa. 2002), the Commonwealth failed to implement SIP mandated emissions testing procedures. Id. The court held that SIP mandated emissions testing procedures were affirmative steps with which the Commonwealth must and had not complied. Id. at 720. Failure by this Commonwealth to use a specified emissions test was not a restatement that the states must attain the NAAQS, and therefore the citizen suit was allowed. Id. Therefore, plaintiffs cannot seek to compel a state or its agencies to comply with the general requirements of the NAAQS, but may seek to enforce specific requirements aimed at achieving the NAAQS. Id. This reasoning implies that any claim not stating specific affirmative steps would not "satisfy the threshold definition of an emission standard or limitation under § 7604(a)(1)(A)."[1] Id. at 720-21.

Assuming that all factual allegations in the Plaintiffs' Amended Complaint are true, this amended complaint has failed to state a claim for relief. Plaintiffs have not alleged any specific

---

[1] The provision at issue in the [Mallory] case commits the Commonwealth to take specific steps in an effort to bring the Philadelphia nonattainment area into compliance with the Act. Specifically, the SIP requires that the Commonwealth utilize ASM emission tests for all 1981 and newer model year vehicles and all 1984 and newer model year light-duty trucks registered within the five-county Philadelphia area and that those ASM emission tests employ specific "final" pass/fail emission standards, or cutpoints, commencing December 1, 1998.
  Because the SIP requirement in the instant case contains a list of affirmative steps that the Commonwealth must take to comply with its terms, it does not merely "restate[ ] the [Act's] requirement that the NAAQS ⋯ must be attained," id. at 770, but rather contains a "valid, identifiable strategy" for achieving its ends. Id. at 771. Consequently, the enhanced I/M program-the final cutpoints and the December 1, 1998 deadline for implementation of the final cutpoints-created under the approved SIP are not designed to lead to general compliance with the NAAQS itself, but with specific requirements established as a mechanism for achieving the NAAQS. These requirements of the SIP satisfy the threshold definition of an "emission standard or limitation" under § 7604(a)(1)(A).

affirmative steps that the Secretary has failed to comply with under the SIP.  Rather, Plaintiffs allege that the Secretary has failed to comply with the CAA by suspending enforcement action against violators during the period when the PADEP is seeking to amend its regulations.  The Amended Complaint states in paragraph 41 that the Secretary's actions will "increas[e] the likelihood that the Commonwealth will not achieve and maintain the health–based 8–hour NAAQS for ground level ozone."  (Amend. Compl. ¶ 41).  Since this claim seeks to enforce the general NAAQS, and not steps aimed at achieving the standards, it does not pass the threshold definition.

Paragraph 40 of the Amended Complaint attempts to allege specific affirmative steps that the Secretary has failed to take.  (Amend. Compl. ¶¶ 40(A–K)).  Plaintiffs aver that "[i]n particular, the Secretary has violated and continues to violate her obligation to implement the Pennsylvania Clean Vehicles Program by failing to take various actions."  Id.  This claim is a general assertion analogous to one that the Secretary has not complied with the NAAQS.  Accompanying subparagraphs allege violations of each section of Clean Vehicles Program, but these sections apply to vehicle manufacturers, not the Secretary.  See 25 Pa. Code §§ 126.401–126.441 (2006).

The SIP provisions that Plaintiffs allege the Secretary has violated either do not apply directly to the Secretary or are within her discretion to enforce.  In Heckler v. Chaney, 470 U.S. 821, 831 (1985), the Supreme Court continued its recognition of the presumption that "an agency's decision not to prosecute or enforce, whether through civil or criminal process, is a decision generally committed to an agency's absolute discretion."  The Court added, "[t]his recognition of the existence of discretion is attributable in no small part to the general

9

unsuitability for judicial review of agency decisions to refuse enforcement." Id.  An agency's refusal to institute proceedings shares to some extant the characteristics of the decision of a prosecutor in the Executive Branch not to indict.  Id. at 833.

Plaintiffs allegations, instead of stating specific provisions of the approved SIP that have been violated, allege that the Secretary is in violation because she has not exercised her enforcement authority against automobile manufacturers who may be selling and delivering new cars and light trucks in the Commonwealth in violation of the federally approved SIP.  While generally, "[o]nce the EPA approves regulations contained in a SIP, the state and federal governments have obligations to enforce them," the CAA does not take away the state agency's discretion over when and how to police violations.  Concerned Citizens of Bridesburg v. U.S. E.P.A., 836 F.2d 777, 781 (3d Cir. 1987) (citing 42 U.S.C. § 7413 (2000)).

Plaintiffs' first allegation that the Secretary has not applied the provisions of the incorporated CA LEV II program fails to state a claim because the Secretary has discretion to choose when and how to enforce the regulations.  (Amend. Compl. ¶ 40(A)).  Section 126.411 of the Pa. Code states the general requirements of the Clean Vehicles Program.  It says  that the program applies to all new passenger vehicles sold, leased, etc. in the Commonwealth.  25 Pa. Code  § 126.411(a).  It also says that certain CA LEV II standards are incorporated by reference. Id. at (b).  The Secretary is not required to do any specific action under this section.

Plaintiffs' second allegation that the Secretary failed to bar the sale, import, delivery or purchase of new light duty vehicles also fails to state a claim, because the Secretary is not required under the SIP to bar the sale, import, delivery or purchase of new automobiles in the Commonwealth.  (Amend. Compl. ¶ 40(B)).  The regulation states that "a person may not sell,

import, deliver, purchase . . . a light duty vehicle . . . subject to [the Program] . . . that has not received a CARB Executive Order[.]"  25 Pa. Code § 126.412(b).  In policing the provision, the Secretary may be able to bar sales and imports, but for the purposes of this claim this provision does not state a specific act that the Secretary must undertake.  The Secretary can only violate this provision by selling, importing, delivering, leasing, renting, acquiring, receiving or registering a new vehicle within the Commonwealth subject to the program that does not comply with the requirements of CA LEV II.

Plaintiffs' third allegation, stating that the Secretary has not found that manufacturers have complied with fleet wide averages, also fails to state a claim of a specific SIP violation. (Amend. Compl. ¶ 40©).  This provision states that fleet average non-methane organic gas emissions from automobile sales by manufacturers shall not exceed specified percentages.  25 Pa. Code § 126.411(b).  Manufacturers are subject to this provision,  and a violation by the manufacturer could be actionable.  The SIP contains no specific provision for the Secretary to undertake and consequently no violation has been alleged.

Plaintiffs' fourth allegation, which states that the Secretary failed to require a valid emissions control label be affixed to new motor vehicles, fails to cite a valid provision of the Clean Vehicles Act and thus fails to state a claim.  (Amend. Compl. ¶ 40(D)).

Plaintiffs' fifth and sixth allegations, stating that the Secretary failed to require new motor vehicle certification for compliance with CA LEV II standards, fail to state claims because the specific required actions are imposed on the automobile manufacturers, not the Secretary. (Amend. Compl. ¶ 40(E) and (F)).  These two provisions require that new vehicles subject to the Clean Vehicles Program receive certification and compliance testing to ensure that they are

within the standards of CA LEV II. 25 Pa. Code §§ 126.421(a); 126.422(a). Manufacturers are subject to these requirements and have attendant duties. The Secretary has within her authority the ability to police violations of these two provisions. Ultimately, no specific violation by the Secretary has been alleged under either provision.

Plaintiffs' seventh allegation is that the Secretary failed to bar the sale or lease of new automobiles that did not have assembly line inspection. (Amend. Compl. at 13, ¶ 40(G)). This claim fails because the provision does not require the Secretary to undertake any action. Section 423 of the Pa. Code states that each "manufacturer . . . shall conduct inspection testing . . ." in accord with the regulations. 25 Pa. Code § 126.423(a). The Secretary does not violate the manufacturer's duty to inspect by not barring the sale of vehicles that were not inspected on the assembly line. Plaintiffs have failed to show a specific violation committed by the Secretary.

Plaintiffs' eighth allegation, that the Secretary did not require new cars meet warranty requirements, fails to state a claim because the provision applies to automobile manufacturers. (Amend. Compl. ¶ 40(H)). The warranty provision states that "[a] manufacturer of new vehicles" shall warrant that the vehicle shall comply. 25 Pa. Code § 126.431(a). The Secretary was not required to warrant anything and as such this claim does not show a violation by the Secretary.

Plaintiffs' ninth, tenth, and eleventh allegations all fail to state claims for relief because the applicable provisions require that the automobile manufacturers submit certain reports and documentation to the Secretary. (Amend. Compl. ¶¶ 40(I–K)). 25 Pa. Code §§ 126.431, 126.432. The Secretary did not violate these SIP provisions because she was to receive the reports from the automobile manufacturers. No specific provision was violated by the Secretary.

All the claims presented by Plaintiffs fail to state any specific affirmative violations of SIP provisions by the Secretary.  Rather, these claims allege that the Secretary has violated the CAA and the NAAQS by her decision to suspend enforcement of the Clean Vehicles Program while the agency conducts a rulemaking session on proposed amendments to the program's compliance date.  Supreme Court precedent states that an agency's decision whether and when to prosecute is analogous to a prosecutors discretion and cannot be reviewed.  Case law in this Circuit and others clearly indicates that Plaintiffs must allege violations of specific affirmative SIP requirements for this citizen suit to go forward.  Since no specific violations have been alleged, the Secretary cannot be subject to this citizen suit.

## IV.    CONCLUSION

For the reasons set forth above, Plaintiffs have failed to state claims for which this court can grant relief.  Plaintiffs have not alleged any specific affirmative actions by the Secretary that are in violation of the Commonwealth's SIP.  The actions that Plaintiffs allege constitute violations are prosecutorial enforcement actions which are solely within the discretion of the Secretary of the PADEP, and as such this court cannot review them.

An appropriate Order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CLEAN AIR COUNCIL, INC. and PENNENVIRONMENT, INC., <br> Plaintiffs, <br> v. <br><br> KATHLEEN A. MCGINTY in her capacity as Secretary of the PENNSYLVANIA DEPARTMENT OF ENVIRONMENTAL PROTECTION, <br> Defendant, <br> _____ and <br><br> ALLIANCE OF AUTOMOBILE MANUFACTURERS, <br> Defendant-Intervenor. | : <br> : <br> : <br> :    CIVIL ACTION <br> :    NO. 06–00741 <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : |

## **O R D E R**

**AND NOW,** this 22nd day of September, 2006, upon consideration of Defendant Kathleen A. McGinty's, in her capacity as Secretary of the Pennsylvania Department of Environmental Protection, Motion to Dismiss Plaintiff's Amended Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure (Doc. No. 32), and Defendant-Intervenor Alliance of Automobile Manufacturers Motion to Dismiss Plaintiff's Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure (Doc. No. 6) and the Responses and Replies thereto, it is it is hereby **ORDERED** that the Motions are **GRANTED** and all claims against Defendants are hereby **DISMISSED.**

BY THE COURT:


/s/ Robert F. Kelly
ROBERT F. KELLY,     Sr. J.